UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CORINA BASS,                           )
                                       )
                Plaintiff,             )
                                       )   Case No. 11-cv-8136
        v.                             )
                                       )   Judge John W. Darrah
JOLIET PUBLIC SCHOOL                   )
DISTRICT #86,                          )
                                       )
                Defendant.             )

## MEMORANDUM OPINION AND ORDER

Plaintiff Corina Bass brings this action against her former employer,

Joliet Public School District # 86 (the "District"), alleging discrimination in violation of

Title VII of the Civil Rights Act of 1964. The District has moved for summary judgment

on Bass's Complaint. For the reasons set out below, the District's Motion is granted.

## BACKGROUND

Local Rule 56.1(a)(3) requires the party moving for summary judgment to provide

"a statement of material facts as to which the moving party contends there is no genuine

issue." Rule 56.1(b)(3) then requires the nonmoving party to admit or deny each factual

statement proffered by the moving party and, in the case of any disagreement, to

specifically reference the "affidavits, parts of the record, and other supporting materials

relied upon." *See also Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir.

2005). This important rule assists the district court by "organizing the evidence,

identifying undisputed facts, and demonstrating precisely how each side proposed to

prove a disputed fact with admissible evidence." *Roger Whitmore's Auto. Servs. v. Lake County, Ill.*, 424 F.3d 659, 664 (7th Cir. 2005) (*Roger Whitmore Auto. Servs.*) (quoting *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000) (*Bordelon*) (internal citations omitted)). A litigant's failure to dispute the facts set forth in its opponent's statement in the manner required by Local Rule 56.1 deems those facts admitted for purposes of summary judgment. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003); *see also Bordelon*, 233 F.3d at 527 (the district court has discretion to require strict compliance with its local rules governing summary judgment). Furthermore, it is not the duty of the district court to scour the record in search of material factual disputes. *Roger Whitmore's Auto. Servs.*, 424 F.3d at 664 (citing *Carter v. AMOCO,* 139 F.3d 1158, 1163 (7th Cir. 1998)).

As an initial matter in this case, Bass's responses to the District's 56.1 Statement of Facts do not comply with Rule 56.1(b)(3). While the parties agree on the majority of facts, in those instances where Bass claims a dispute with the District's assertions, she offers none of the specific record support required by Rule 56.1. (*See* Pl.'s Resp. to Def.'s Rule 56.1 Stat. of Material Facts.) Indeed, Bass fails to attach any supporting materials to her response and instead improperly cites to paragraphs in her own Plaintiff's Rule 56.1 Statement of Additional Facts ("PSAF").[1] Furthermore, many of Bass's responses contain generalized arguments based on her subjective beliefs and which do

---

[1] In her Plaintiff's Rule 56.1 Statement of Additional Facts, Bass repeatedly, and nearly exclusively, cites to "Def. Tab 5," which is not one of the District's exhibits. It appears that she intends instead to cite to her own deposition testimony, which is found at the District's Tab B.

not dispute the District's statements. An example is Bass's response to the District's paragraph 23:

> 23. Based on a review of the results of the time study and the substitute custodian's ability to perform the duties listed on the task card, Duncan and Whalen approved the reassignment of the second-floor restroom duties at Cunningham. Tab D, Duncan Decl. at ¶ 12.

> **RESPONSE**:  Disputed as the a [sic] time study was done on the custodial duties performed at the school, Bass believed the time study wasn't accurate because the time study didn't include all the duties needed to be performed on the job and the time to clean. (PSAF ¶ 13)

After sorting through Bass's improper assertions and objections, the Court is left with the following undisputed, relevant facts.[2]

*Bass Was Assigned to Clean Cunningham Elementary School in 2002*

Bass, a female and a resident of Joliet, was employed as a custodian for the District from May 2001 until February 2, 2011.  (Defendant's Rule 56.1 Statement of Uncontested Material Facts ("SUF") ¶ 4.)  In April 2002, Bass was assigned to work the 2:00-10:30 p.m. shift at Cunningham Elementary School ("Cunningham").  (SUF  ¶ 5.) Bass's duties involved performing heavy physical labor and operating cleaning equipment and tools.  (*Id.* ¶ 8.)  Starting in 2003, after Cunningham was expanded to include a second floor, a second custodian, Lewis Pickens, was assigned to work there

---

[2] Bass argues that the sworn declarations submitted by the District should be disregarded on the basis:  the declarants are "biased" against her; submitting declarations is insufficient for summary judgment; and she has not examined the declarants.  None of these assertions has any merit.  Federal Rule of Civil Procedure 56(c)(1) expressly permits a party to submit declarations to assert that "a fact cannot . . .  be genuinely disputed."  Furthermore, Bass never deposed any of the District's declarants, despite the fact that she was put on notice of all of them through the District's Rule 26(a)(1) initial disclosures and the documents produced in discovery.  Bass's failure to take discovery is attributable only to herself.

during the same shift as Bass. (*Id.* ¶ 11.) Pickens was assigned to clean the second floor of the building, which included 19 classrooms and the library, and Bass was assigned to clean the first floor, which included 11 classrooms and the gym. (*Id.* ¶ 12.) From November 2008 until her termination, Bass's direct supervisor was Cunningham Principal Maria Arroyo. (*Id.* ¶ 6.)

As a member of AFSCME Local 949 (the "Union"), Bass was subject to the Collective Bargaining Agreement ("CBA") between the Union and the District. (*Id.* ¶ 9.) The CBA permits its Union members a one-time disability leave for up to twelve months if they are unable to work after exhausting all accrued sick leave. (*Id.* ¶ 10.) The CBA also provides that employees who are absent after exhausting all accrued sick leave are subject to disciplinary action, including termination. (*Id.*) Bass took several extended leaves of absence during her employment with the District, including two disability leaves of nearly a year, from March 14, 2005 - January 27, 2006, and September 3, 2007 - July 9, 2008, even though CBA entitled her to only one such leave. (*Id.* ¶ 15.)

*The District Reviewed Custodial Assignments and*
*Assigned Bass Additional Duties in 2008*

Early in the 2008-2009 school year, the District took steps to improve the efficiency of its custodial staff, including purchasing new types of cleaning equipment and hiring an outside vendor, Pike Systems ("Pike"), to conduct a time study of custodial duties at eleven District schools. (*Id.* ¶ 19.) In the case of Cunningham, Pike concluded that the tasks assigned to the custodian on the second floor (Pickens) took more time than his shift allowed, while the custodian on the first floor (Bass) had time to complete

additional duties.[3]  As a result, Pike recommended reassigning the restrooms on the second floor to Bass.  (*Id.* ¶ 20-21.)  Pike's recommendation of restroom reassignment was further supported when a custodian, substituting for Bass, was able to complete the additional restroom duties during the shift.  (*Id*. ¶ 22.)

During this time period, Troy Whalen, the former Assistant Superintendent for Business and Financial Services, and Darren Duncan, Manager of Building Support Services, were responsible for overseeing the custodians at the District's twenty-one schools.  (*Id.* ¶ 7.)  Based on Pike's study and the substitute custodian's ability to clean the additional restrooms during the shift, Duncan and Whalen approved the reassignment of the second-floor restroom duties at Cunningham.  (*Id.* ¶ 23.)  They also approved reassignments at other schools, resulting in seven male custodians or building engineers being assigned additional duties.  (*Id.* ¶ 24.)  On December 10, 2008, Whalen, Duncan, and Arroyo held a meeting to discuss the reassignments with Bass, Pickens, and the building engineer at Cunningham, Charles Hicks.  (*Id.* ¶ 26.)  At the meeting, Bass complained that the additional restrooms were too much work and that the assignment was not fair but did not say she believed the time study was incorrect.  (*Id.* ¶ 27.)

Also on December 10, 2008, Whalen and Assistant Superintendent for Human Resources and Labor Relations Cheryl Woods-Clendening met with Bass and her Union

---

[3] In her Response to the District's SUF and in her PSAF, Bass asserts that she "believed that the time study wasn't accurate because the time study didn't include all the duties needed to be performed on the job and the time to clean." (*See, e.g.,* Pl.'s Resp. to Def.'s SUF at ¶¶ 19-20; PSAF ¶ 13.)  In her PSAF, she cites to Def. Tab "5," which, as noted in footnote 1, presumably is her deposition testimony at Def. Tab B.  Apart from her own belief, Bass offers no other evidence that the time study was inaccurate or that it was discriminatory.

representative after Duncan informed Whalen and Woods-Clendening that Bass had not used some of the newly purchased cleaning equipment.[4]  (*Id.* ¶ 28.)  Although Bass was not disciplined on this occasion, she was reminded to use the new equipment.  (*Id.* ¶ 29.)

*Bass Was Reprimanded for Failing to Complete Her Duties in Early 2009*

On January 16, 2009, Arroyo, Duncan, Whalen, and Cunningham Assistant Principal Pat Evans conducted a walk-through of Cunningham to inspect its cleanliness, after a parent complained that the school was not clean.  (*Id.* ¶ 30.)  Arroyo's report from the walk-through found multiple areas within Bass's responsibility that had not been cleaned, including the following:  the floors appeared to have been mopped with dirty water due to noticeable streaks on the floor; the gym balcony was "filthy," and there was dust on the floor and benches; and a black rim of grime was visible in all the restrooms.  (*Id.* ¶ 31.)  Arroyo discussed the report with Bass, and in her deposition, Bass admitted that she had left the gym dirty at that time.  (*Id.* ¶ 32; *see also* Def. Tab B at 111.)  Duncan also completed a report from this walk-through, in which he noted, among other things, that the cleaning equipment was not being used.  (*Id.* ¶ 34.)

On or about January 21, 2009, Bass failed to clean the restrooms on the second floor at Cunningham.  (*Id.* ¶ 35; *see also* Def. Tab B at 112:19-23.)  On February 4, Bass was given a one-day suspension without pay, which she served on February 5.  (*Id.* ¶ 36.)  Bass admitted that she did not clean the restrooms on this occasion and did not contest

---

[4] Specifically, Bass was not using the new "Kai Vac," which is a machine that cleans restrooms using a power water spray, and the new backpack vacuum.  (*Id.* ¶ 16.)  Bass had been trained on this equipment in September and October 2008.  (*Id.* ¶ 17.)  In her Response, Bass asserts that the "Kai Vac" "didn't work on certain washroom edges and around toilets."  (Pl.'s Resp. to Def.'s SUF at ¶ 18.)  However, Bass does dispute the fact that she failed to use the Kai Vac.

her suspension. (*Id.*) Also on February 4, 2009, Bass failed to clean the gym during her shift, and the building engineer had to clean the gym the next morning. (*Id.* ¶¶ 36-37.) Following this incident, a disciplinary hearing was held with Phyllis Wilson, Superintendent; Chris Ward, Chief Officer for Legal Services and Labor Relations; Woods-Clendening; Arroyo; Duncan; several Union representatives; and Bass. (*Id.* ¶ 38.) During the meeting, Wilson warned Bass that her continued failure to perform her assigned duties could lead to her termination.[5] (*Id.*) Since this was her second offense in a short period of time, Bass received a five-day suspension without pay, which she served between February 10-17, 2009. (*Id.* ¶ 39.)

### *Bass Improved and Fulfilled Her Duties for the 2009-2010 School Year*

After her two suspensions, Bass's performance improved significantly, and she received no further discipline for poor performance. (*Id.* ¶ 40.) At the end of the 2009-2010 school year, Arroyo rated Bass's performance as "Exceeds Standards," the highest possible rating, in every category. (*Id.* ¶ 42.) Some of Arroyo's comments included, "Mrs. Bass [sic] work performance is of high quality . . . . Her work areas are always well kept and maintained"; and "Mrs. Bass completes her job responsibilities and goes beyond without being told." (*Id.*)

---

[5] Bass claims to "dispute" these statements on the basis that she "stated over and over there was too much work for her to complete because of the hallways, the glass, the doors and too much work added on and that Lewis was to help her on the bathrooms. (PSAF ¶18)." (Pl.'s Resp. to Def.'s SUF at ¶¶ 36, 38.) However, she does not dispute that she failed to clean the gym or restrooms or that she was given suspensions.

*Bass Repeatedly Missed Work for Injuries in the 2010-2011 School Year*

However, on August 12, 2010, Bass injured her back while moving chairs at work and went out on family medical leave. (*Id.* ¶ 43.) On October 27, 2010, Woods-Clendening informed Bass that since Bass had already used two long-term disability leaves and all other accrued leave, she would exhaust all available leave as of November 3, 2010. (*Id.* ¶ 44.) Woods-Clendening further told Bass that her failure to return to work would result in her termination. (*Id.*) In response, Bass provided the District with a note from her doctor indicating that she could return to work on light duty. (*Id.* ¶ 45.) Woods-Clendening explained to Bass that, in accordance with longstanding District practice, the District did not have light-duty assignments for custodians. (*Id.*)

Bass provided another doctor's note, dated November 2, 2010, that she could return to work without restrictions, and she returned to work on November 4, 2010. (*Id.* ¶ 46.) However, Bass injured her back again on November 16, 2010. (*Id.* ¶ 47.) She was out of work for 2.5 days but had only one sick day accrued at that time. (*Id.* ¶ 48.) Consequently, 1.5 days of Bass's absence were unexcused and unpaid. (*Id.*) As a result of the unexcused absence, she received a written reprimand in accordance with the CBA. *Id.* ¶ 49. Bass returned to work again on November 19, 2010. (*Id.* ¶ 50.)

Bass failed to report to work on January 3, 2011. (*Id.* ¶ 51.) She provided the District a note from her doctor, dated January 4, 2011, stating that she could not work due to severe lower back pain, and told Duncan's secretary that she would be absent for at least a week. (*Id.* ¶ 52.) At the time she submitted the note, Bass was aware that she had limited leave time available. (*Id.*) On January 4, 2011, Woods-Clendening informed

Bass that all of her available leave would be exhausted on January 5, 2011, and that she would be terminated if she did not return to work. (*Id.* ¶ 53.) Rather than returning on January 6, 2011, however, Bass brought in another note from her doctor, dated January 7, 2011, indicating that she could not work and that provided no anticipated return-to-work date. (*Id.* ¶ 54.)

*Bass Was Terminated for Job Abandonment in February 2011*

Although the CBA gave the District the right to terminate Bass's employment, Bass was not terminated immediately. (*Id.* ¶ 55.) Instead, Ward, Woods-Clendening, Duncan, Assistant Superintendent for Business and Financial Services Wesley Russell, and two Union representatives met with Bass on January 13, 2011 regarding her unexcused absences. (*Id.* ¶ 56.) At the meeting, Bass provided another doctor's note, dated January 12, 2011, stating that she could return to work with a lifting restriction of twenty pounds. (*Id.*) The District's administrators repeated that there was no light-duty work for custodians. (*Id.* ¶ 57.) The administrators asked when Bass would be able to return to work without restrictions, but Bass did not respond to that inquiry. (*Id.*) Bass's employment was then terminated on February 2, 2011, on the ground of job abandonment/failure to return to work after exhausting all available leave. (*Id.* ¶ 59.) The District has terminated other employees who failed to return to work after exhausting all available leave. (*Id.* ¶ 60.) Among these employees are three male custodians – Kenneth Gregory, Mack Jobe, and Danny Thompson – who were terminated between 2008 and 2011. (*Id.*)

On May 24, 2011, Bass filed a charge against the District with the Equal

Employment Opportunity Commission ("EEOC"), alleging gender discrimination, and

received a Notice of Right to Sue on August 17, 2011.  (Compl. ¶¶ 14-5.)

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  The moving party bears the initial responsibility of informing the

court of the basis for its motion and identifying the evidence it believes demonstrates the

absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-

24 (1986).  If the moving party meets this burden, the nonmoving party cannot rest on

conclusory pleadings but "must present sufficient evidence to show the existence of each

element of its case on which it will bear the burden at trial."  *Serfecz v. Jewel Food*

*Stores*, 67 F.3d 591, 596 (7th Cir. 1995) (citing *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986)).  A mere scintilla of evidence is not

sufficient to oppose a motion for summary judgment; nor is a metaphysical doubt as to

the material facts.  *Robin v. ESPO Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000)

(citations omitted).  Rather, the evidence must be such "that a reasonable jury could

return a verdict for the nonmoving party."  *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625

(7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)

(*Anderson*)).

In considering a motion for summary judgment, the court must view the evidence

in the light most favorable to the nonmoving party and draw all reasonable inferences in

the nonmoving party's favor. *Abdullahi v. City of Madison*, 423 F.3d 763, 773

(7th Cir. 2005) (citing *Anderson*, 477 U.S. at 255). The court does not make credibility

determinations or weigh conflicting evidence. *Id.*

## ANALYSIS

A Title VII plaintiff may proceed either under the direct method, by presenting

evidence of discriminatory intent, or the indirect, burden-shifting method. *Hildebrandt v.*

*Ill. Dep't of Natural Resources*, 347 F.3d 1014, 1029 (7th Cir. 2003). Under the direct

method, the plaintiff must show essentially an admission by the defendant that the action

was based on a prohibited animus. *Blise v. Antaramian*, 409 F.3d 861, 866 (7th Cir.

2005) (*Blise*). In contrast, under the indirect method, a plaintiff may establish a *prima*

*facie* case by showing: (1) membership in a protected class; (2) performance meeting the

employer's legitimate expectations; (3) an adverse employment action; and (4) similarly

situated employees outside of the protected class who were treated more favorably.

*Hossack v. Floor Covering Associates of Joliet, Inc.*, 492 F.3d 853, 860 (7th Cir. 2007)

(*Hossack*); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). If

the plaintiff satisfies this burden, the employer then has the burden to articulate a

legitimate, nondiscriminatory reason for its decision. *Hossack*, 492 F.3d at 860. The

plaintiff may then challenge that reason as a pretext for discrimination. *See also Coffman*

*v. Indianapolis Fire Dep't*, 578 F.3d 559, 563 (7th Cir. 2009) (*Coffman*).

Bass alleges that the District discriminated against her based on her gender when

the District increased her workload in December 2008 and then penalized her in

February 2009 for poor performance. She contends that the reassignment of the second-

11

floor restrooms in December 2008 demonstrates that Pickens, a male, was treated better than she was. She further claims that she was unfairly reprimanded in November 2010 for missing work and also unfairly terminated in February 2011.

*Bass's Untimely Claims*

As an initial matter, the District argues that Bass's allegations based on events before July 29, 2010 are untimely and cannot establish a claim. A plaintiff may not recover for acts that occurred outside the 300-day window preceding her EEOC charge. *See Roney v. Illinois Dept. of Transp.*, 474 F.3d 455, 460 (7th Cir. 2007) (*Roney*); 42 U.S.C. § 2000e-5(e)(1). Although Bass filed her EEOC charge on May 24, 2011, she argues that her otherwise time-barred acts are actionable under the "continuing violation doctrine."

The continuing violation doctrine permits a plaintiff "to delay suing until a series of acts by a prospective defendant blossoms into a wrongful injury on which a suit can be based." *Lewis v. City of Chicago*, 528 F.3d 488, 493 (7th Cir. 2008). The doctrine applies where "duration and repetition are necessary to convert merely offensive behavior into an actionable change in the plaintiff's working conditions." *Stepney v. Naperville Sch. Dist. 203*, 392 F.3d 236, 240 (7th Cir. 2004) (*Stepney*) (citations omitted). It does not, however, apply to discrete acts that occur outside of the limitations period, even if there is a "lingering effect of an earlier, distinct wrong." *Robinson v. Stanley*, 474 Fed. App'x 456, 458 (7th Cir. 2012) (quoting *Pitts v. City of Kankakee*, 267 F.3d 592, 595 (7th Cir. 2001)).

Both the December 2008 reassignment of the restrooms to Bass and her February 2009 suspensions were discrete acts that were immediately apparent and are not alleged to have changed through duration or repetition. *See Stepney*, 392 F.3d at 240. Moreover, nearly two years passed from the time that Bass received the February 2009 suspensions for poor performance until she was reprimanded again for missing work in November 2010. In *Selan v. Kiley*, 969 F.2d 560, 567 (7th Cir. 1992), the Seventh Circuit held that the almost two year gap was a "considerable separation" that "weigh[ed] heavily against finding a continuing violation." *See also Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 727 (7th Cir. 2007) (*Lucas*) (following *Selan*). Consequently, Bass's claims based on acts from 2008 and 2009 do not fall within the continuing violation doctrine and are now barred. *See Roney*, 474 F.3d at 460.[6] However, even if these acts were to be considered as timely support for Bass's claims, they fail to support her claims, as discussed below.

*Bass's Claims*

Bass argues that she has presented sufficient circumstantial evidence of sex discrimination under the direct method of proof to survive the District's motion for summary judgment. She claims that she has "submitted a wealth of circumstantial evidence" and "direct evidence in the form of declaration testimony." (Pl.'s Resp. Brief

---

[6] Bass points out that untimely acts of alleged discrimination may be considered where they form part of an actionable hostile work environment if at least one hostile act occurs within the limitations period. *See Lucas*, 367 F.3d at 724. However, Bass has not asserted a hostile work environment claim in either her Complaint or her Response brief, and, as such, she has waived any such claim. *See Davis v. Time Warner Cable of Southeastern Wis., L.P.*, 651 F.3d 664, 667n1 (7th Cir. Wis. 2011) (finding that plaintiff who failed to develop a hostile work environment claim in his brief had waived it).

at 8.)   That claim is flatly wrong; Bass has failed to submit *any* evidence on her own. Instead, as noted above, she relies on her deposition testimony submitted by the District but even fails to properly cite to that exhibit and cites instead to an exhibit that does not exist.  She does not advance any examples of the District's discriminatory attitude or behavior toward women and simply repeats her own belief that she was treated unfairly because she is a woman.  Bass cannot prevail under the direct method.  *See Blise*, 409 F.3d at 866; *see also Coffman*, 578 F.3d at 563 (affirming dismissal on summary judgment where plaintiff failed to advance direct or circumstantial evidence of sex discrimination).

Since she cannot prevail under the direct method, Bass must establish all four elements of a *prima facie* case of sex discrimination under the indirect method of proof. *See Lucas*, 367 F.3d at 728.  Although Bass satisfies the first element as a member of a protected class, Bass must establish the second element and show that she was performing well enough to meet her employer's legitimate expectations.  *See Hossack*, 492 F.3d at 860.  The District argues that Bass was not meeting its legitimate expectations of attendance in late 2010 and early 2011.  Bass repeatedly missed work for injuries, starting in August 2010.  In October 2010, Bass was warned that because she had already taken two long-term disability leaves and other accrued leave, she would be terminated if she failed to return to work.  She missed work for injuries again in November 2010 and received a written reprimand for her unexcused absence, in accordance with her Union contract.  She returned to work but then failed to report to work again on January 3, 2011.  As Bass admits, she had exhausted all available leave as

of January 5, 2011, and her absences after that date were unexcused. Bass was

terminated on February 2, 2011 for job abandonment.

Bass's documented attendance problems and unreliability demonstrate that she

was not meeting the District's legitimate expectations. *See, e.g., Contreras v.

Suncast Corp.*, 237 F.3d 756, 761 (7th Cir. 2001) (employee who repeatedly violated the

company's work attendance guidelines was not meeting its legitimate expectations); *see

also EEOC v. Yellow Freight Sys.*, 253 F.3d 943 (7th 2000) ("no business is 'obligated to

tolerate erratic, unreliable attendance.'") (internal citations omitted). Bass, therefore, has

not met her burden with respect to this element.

Bass must also show that she suffered the third element: an adverse employment

action. Although her 2011 firing is clearly an adverse employment action, two of her

other complained-of actions, the 2008 reassignment of restrooms and the November 2010

reprimand for missing work, are not. Even if the 2008 reassignment of restrooms was not

time-barred, as discussed above, it still would not qualify as a materially adverse action

because it was clearly within Bass's job duties as a custodian and simply constituted an

alteration of job responsibilities. "A materially adverse employment action is something

more disruptive than a mere inconvenience or an alteration of job responsibilities . . . .

[N]ot everything that makes an employee unhappy is an actionable adverse action."

*Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 780 (7th Cir. 2007) (citations and

internal quotations omitted); *see also Place v. Abbott Labs.,* 215 F.3d 803, 810 (7th Cir.

2000) ("being shifted to an essentially equivalent job that [the plaintiff] did not happen to

like as much does not a Title VII claim create."). Similarly, the November 2010

reprimand was not an adverse employment action because it had no "tangible job consequence." *Lucas,* 367 F.3d at 731 ("admonishment by an employer does not rise to the level of an adverse employment act," unless there is "some tangible job consequence") (internal citation omitted). Bass was not paid for 1.5 days that she missed because she had exhausted all available leave and not as a disciplinary matter; therefore, there was no "tangible job consequence." *Id.*; *see also Matthews v. Potter,* 2010 WL 5060246 (N.D. Ill. Dec. 6, 2010), at *5 (plaintiff's loss of benefits, which resulted from her exhausting her paid leave and not returning to work, was not an adverse action). Therefore, the only adverse employment action was Bass's 2011 termination.

Likewise, Bass has not established the fourth element of a *prima facie* case: that a similarly situated male employee was treated more favorably than she was. *See Lucas*, 367 F.3d at 728. Bass points to only one male, Lewis Pickens, who she claims was treated better that she was. However, her claim about Pickens solely concerns the 2008 reassignment of the restrooms from Pickens to Bass, which, as discussed above, is not an adverse employment action. Bass does not claim that Pickens, or any other male, was treated more favorably with respect to missing work, using all available leave and/or being terminated for job abandonment. In contrast, the District has submitted evidence that three male custodians were terminated between 2008 and 2011 for the same reason as Bass, namely, that they had exhausted all available leave. As such, Bass has also failed to carry her burden with respect to this element. Her sex discrimination claim, therefore, fails as a matter of law.

**CONCLUSION**

For the reasons stated above, Joliet Public School District # 86's Motion for

Summary Judgment [16] is granted.   All pending matters having been resolved, this civil

case is terminated.


Date:___March 20, 2013_____          _____
                                        JOHN W. DARRAH
                                         United States District Court Judge